Jambs S. Brown, J.
This case was tried by the court without a jury. One Irving (Isadore) Becker, a truck driver’s helper, was killed on October 15, 1952 while riding on top of a load of boxes on an open truck of his employer. As this truck was proceeding easterly along St. Marks Avenue near Franklin Avenue, Brooklyn, the decedent’s head came in contact with the bridge which crosses St. Marks Avenue from north to south at that point. This overhead structure has been there for many years. It is part of the elevated portion of a branch of the city subway system, which is known as the “Brighton Line ” shuttle.
Plaintiff is the carrier on the workmen’s compensation policy of the employer of this decedent. It brought this action against the City of New York under section 29 of the Workmen’s Compensation Law whereunder it is subrogated to the rights of the decedent’s beneficiaries and acquires by automatic assignment any claim such beneficiaries may have against third parties.
The complaint set forth two causes of action, the first for wrongful death and the second for pain and suffering. At the beginning of the trial the second cause of action was discontinued by consent without costs, it being conceded that the decedent was dead before the ambulance arrived. It was further stipulated that the awards of compensation paid by the plaintiff to the widow totalled $983.51, including $400 for funeral expenses; that, in addition, a final payment of $20,212.49 was made on March 16, 1953 to the Aggregate Trust Fund of the State Insurance Fund for the benefit of the widow and the decedent’s only child; that no will of the decedent had ever been offered for probate and no petition for letters of administration had ever been filed in the Surrogate’s Court of Kings County and, hence, no letters testamentary or of administration ever had been issued to anyone; that on January 14, 1953 the widow filed a notice of claim with the city and that on May 20, 1953 *112 she appeared and was examined by the comptroller; that on August 4, 1953 her attorney advised the city that she was discontinuing her claim against the city; that on November 18, 1953, pursuant to said section 29 of the Workmen’s Compensation Law, plaintiff served the required 30-day notice on her by registered mail, notifying her that if she did not start suit by December 19, 1953, the cause of action would be assigned automatically; that on December 22, 1953 a notice of claim was filed by plaintiff with the city comptroller; that on January 18, 1954 plaintiff’s representative appeared and was examined by the comptroller; that this action was instituted on February 24, 1954 and issue was joined on March 11,1954.
It was also conceded that the accident was the cause of the decedent’s death; that it happened at about 5:45 p.m. on October 15, 1952; that it was not dark at the time and the street lights and automobile lights were not on; and that at the time of his death the decedent was 51 years of age and that his wife was 44 years of age.
It was also stipulated that plaintiff was claiming a violation by the city of subdivision 18 of section 14 of the Vehicle and Traffic Law and that plaintiff was also suing in common-law negligence; and that this elevated railroad structure was 13 feet 3 inches above the street pavement where the decedent’s head hit it, and that at the time it was not marked with any sign indicating what the clearance was. It was also agreed that the truck involved was a 1947 White 10-ton truck with a rack body, with poles sticking up on the sides.
Plaintiff called three witnesses. The first was the truck driver who testified that this was the first day he had ever worked with the decedent whose job it was to help him load and unload the truck; that shortly before the accident they had gone to a pier on the Brooklyn waterfront, and loaded on to this truck numerous wooden cases filled with panes of window glass; that these cases were of different sizes and were standing on their ends, some being stacked one on top of another; that some of those that were so stacked were higher than the tops of the poles on the sides of the truck. He also stated that when they left the pier he saw the decedent sitting on top of the last tier of boxes in the back of the truck, and that he had his legs dangling over the rear and he was riding backwards; that his body from his chest up extended above the height of the truck; that they were proceeding along St. Marks Avenue at 15 to 20 miles an hour and when he was some 400 feet from this bridge he clearly saw it but he estimated the clearance to be about 13 or 14 feet and *113 assumed his truck and load would clear, so he did not slow down; that after he had passed the bridge his attention was attracted by people who were shouting at him from another automobile. He then stopped his truck, went back and found the decedent lying directly underneath this bridge. He also testified he had been driving a truck for 27 years and therefore was accustomed to estimating heights and distances.
Plaintiff’s second witness was one Trueman who for several blocks had been driving his own automobile directly behind the truck. He had noticed decedent sitting on the top of these boxes with his back toward the front of the truck and his feet dangling over the rear; and as they approached this bridge he and the two men riding with him in his car, anticipating that decedent’s head might come in contact with the bridge, started to toot his horn and yell and make gestures in an effort to attract decedent’s attention to the danger. He saw decedent’s head come in contact with the bridge and saw decedent tumble off.
Plaintiff called as its third witness decedent’s widow. She testified that decedent was a steady worker and was not addicted to drinking or gambling; that he was a good family man and gave her $45 to run the house out of his weekly pay which averaged $56.42; that his only child, a daughter, was 9% years old when he died. She was not cross-examined.
The city called one James Kennedy who was riding in True-man’s car. He testified that he had been observing the decedent riding in the position that had been described and that two blocks before they reached the scene of the accident the decedent was hit on the head with a branch of a tree and the witness then saw him rub his head but the decedent never changed his position. He corroborated Trueman’s testimony that he and True-man and the third man in Trueman’s car some 200 feet from the scene of the accident realized that decedent might be hit by this bridge and tried to attract the decedent’s attention and have him crouch down.
The city also called one Lee W. Edde, Jr., the third person in Trueman’s car, who corroborated the testimony of Trueman and Kennedy and also stated that a block or two before the decedent’s head was hit by the tree branch the decedent’s head almost struck a horizontal wire; and that as they were crossing Classon Avenue, which was some 300 or 400 feet before the place of the accident, he got out on the running board of Trueman’s automobile and started to yell and wave at the deceased to attract his attention to the impending danger. He also testified that when Trueman accelerated his car and headed off the truck *114 right after the accident he noticed that there was nobody riding in the truck cab with the truck driver and that the cab was large enough to accommodate three persons.
The pleadings herein raise several questions of law. The first is as to the timeliness of plaintiff’s notice of claim. The court finds that the notice filed by plaintiff on December 22, 1953 was timely. The 90 days’ notice required by section 50-e of the General Municipal Law in a death action does not start to run until the appointment of an administrator (Joseph v. McVeigh, 285 App. Div. 386). Since no administrator had ever been appointed here, the time for filing a notice of claim began to run when the cause of action was assigned to plaintiff by operation of section 29 of the Workmen’s Compensation Law. The notice was filed three days after such assignment.
Similarly, since the cause of action was assigned on December 19,1953 and accrued on that day, the service of the summons and complaint on February 24, 1954 commenced the action on time because it was brought within two years of the date of death, as required by section 130 of the Decedent Estate Law and within one year from the date the action accrued as required by paragraph c of section 394a-1.0 of the Administrative Code of the City of New York.
Plaintiff alleges that the facts herein establish a violation by defendant of subdivision 18 of section 14 of the Vehicle and Traffic Law of the State of New York which reads: “ 18. It shall be the duty of the superintendent of public works to cause signs to be erected at both ends on the right side of or overhead on all bridges, viaducts or other structures under his jurisdiction, stating the legal overhead clearance in feet above the surface of such highway. For all other bridges, viaducts or other structures, it shall be the duty of the authority having jurisdiction to place similar signs. The legal clearance shall be one foot less than the measured clearance. On structures having fourteen feet or more of measured clearance, no such sign shall be required.”
In my opinion the subdivisions of section 14 do not apply to the overhead structure involved in this action because it is located in New York City. The opening paragraph of that section reads: “ § 14. Dimensions and weights of vehicles. No person shall operate or move, or cause or knowingly permit to be operated or moved on any highway or bridge thereon, in any county not wholly included within a city, any vehicle or combination of vehicles of a size or weight exceeding the limitations provided for in this section. ’ ’ (Emphasis supplied.)
*115 However, even if that statute were applicable I find no causal connection between the lack of a sign and the happening of the accident.
I also find that the facts fail to establish any common-law negligence on the part of the city.
Equally important is the matter of contributory negligence on the part of this decedent. I find that the defendant has sustained its burden of proving that this decedent unnecessarily and without any justification elected to ride in this perilous position with his head some 14 feet above the level of the pavement. Assuming that he placed himself in that position without thinking, any ordinarily prudent man would have been alerted to the danger when his head came in contact with the branch of a tree. In this day and age of low hanging traffic signals and wires in a place like Brooklyn it cannot be said that an ordinarily prudent man would elect to ride in such a fashion, especially when a comfortable and safe place was available to him in the cab of the truck.
The court finds as a fact that this decedent was guilty of contributory negligence and accordingly grants defendant’s motion to dismiss the plaintiff’s complaint on the merits, with costs.